**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Edward Eans, | No. CV-22-01532-PHX-DLR |
| Plaintiff, | |
| v. | **ORDER** |
| Sherry Lund, | |
| Defendant. | |

Before the Court are the parties' cross motions for summary judgment, which are fully briefed. (Docs. 51-56.) For the reasons below, Plaintiff Edward Eans' motion is granted in part and denied in part, and Defendant Sherry Lund's motion is denied.[1]

## I.      Background

Plaintiff was hired by Defendant on October 15, 2020, to serve for an indeterminate period of time as one of multiple caretakers for her elderly parents (collectively "the Sellmans"). (Doc. 51-1 ¶¶ 4, 11; Doc. 51-2 at 14; Doc. 52-3 at 25.) The Sellmans both suffered from dementia. (Doc. 52-3 at 18.) Mr. Sellman also had a brain bleed from a prior fall and Mrs. Sellman had congestive heart failure. (*Id.* at 18, 24.) Plaintiff was recommended to Defendant by Camelview Staffing Agency as a potential caretaker based on the caregiver experience Plaintiff gained while operating his own business, "Home Houseman Services." (Doc. 51-1 ¶¶ 5, 9; Doc. 51-2 at 3-6.) Defendant hired Plaintiff to

---

[1] Defendant's request for oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

work 60 hours a week and paid him $20/hour for all hours worked. (Doc. 51-1 ¶ 21; Doc. 52-2 at 6.)  Plaintiff and Defendant never discussed overtime work or pay. (Doc. 51-1 ¶ 20; Doc. 51-2 at 39-40.) Plaintiff was paid via Zelle by Defendant's daughter, Sabrina Lovejoy. (Doc. 51-1 ¶ 22; Doc. 54-2 at 2.) Prior to starting work, Plaintiff signed an "Agreement to Pay Personal Taxes" acknowledging Defendant would not automatically take out taxes each pay period. (Doc. 51-6; Doc. 54-2 at 2.) Defendant provided Plaintiff with a Form-1099 for tax purposes each year. (Doc. 51-1 ¶ 13.)

Defendant had set 12-hour shifts the caregivers could work. (Doc. 52-3 at 11.) Plaintiff's schedule consisted of night shifts from 8pm-8am, and one 24-hour shift from Saturday at 8pm to Sunday at 8pm. (Doc. 51-1 ¶ 30; Doc. 51-2 at 49.) Sundays were the only time Plaintiff worked during the day. (Doc. 51-1 ¶ 31.) Defendant created "Daily Routine" sheets for the Monday-Saturday dayshift caregivers. (Doc. 54-3.) Each Daily Routine sheet detailed the work Defendant expected to be done that day in terms of housework. (*Id.*) Defendant did not create Daily Routine sheets for any of the nightshifts or for the Sunday dayshift. (Doc. 51-1 ¶ 42; Doc. 51-2 at 72.) As a result, Plaintiff did not follow a specific Daily Routine sheet for any of his shifts. (*Id.*) Plaintiff's non-specified job duties included watching the Sellmans, cooking meals when appropriate, checking the Sellmans' blood pressure and oxygen levels twice a day, doing laundry, and doing light cleaning, among other things. (Doc. 51-1 ¶ 4; Doc. 52-2 at 20, 23-25; Doc. 52-3 at 22-24.) Plaintiff logged information about each of his shifts in a "Daily Log" shared by all caregivers. (Doc. 53-2; Doc. 54-2 at 3.) Plaintiff also often communicated with Defendant about his shift activities via text message. (Doc. 51-7; Doc. 53-9; Doc. 54-2 at 3.)

On May 5, 2022, Plaintiff informed Defendant via text message that he could no longer be a caregiver for the Sellmans due to his own heart condition. (Doc. 53-9 at 109.) Then, on September 12, 2022, Plaintiff filed a complaint alleging Defendant had violated the Fair Labor Standards Act of 1938 ("FLSA") by failing to pay him overtime wages. (Doc. 1.) On July 24, 2023, the parties filed cross motions for summary judgment. (Docs. 51, 52.) Both motions seek summary judgment on Plaintiff's status as either an independent

contractor or employee; if the latter, whether the FLSA's "companionship" exemption applies to Plaintiff; and, assuming liability, whether Defendant would owe liquidated damages. (*Id.*) Plaintiff's motion also seeks summary judgment on Defendant's obligation to pay wages for Plaintiff's sleep hours, and on Defendant's laches affirmative defense. (Doc. 52.)

## II.    Legal Standard

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will grant summary judgment when, viewing the facts in a light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party based on the competing evidence. *Id.*

Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, the party seeking summary judgment bears the initial burden of informing the Court of the "basis for its motion, and identifying those portions of the [record] which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotations omitted). The burden then shifts to the non-movant to establish the existence of a genuine dispute of material fact. *Id.* at 324. The non-movant may not simply rest upon the allegations of her pleadings. Rather, the non-movant must point to "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Furthermore, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

## III.   Discussion

Plaintiff argues that he is an "employee" not covered by the companionship exemption and is therefore entitled to overtime wages. He also argues that Defendant's failure to pay overtime wages was not in good faith, entitling him to liquidated damages under the FLSA. Lastly, Plaintiff argues that Defendant cannot assert a laches defense because the FLSA provides its own statute of limitations.

Defendant argues that Plaintiff is an independent contractor but, alternatively, if he was an employee, then he falls under the FLSA's companionship exemption and is therefore not entitled to overtime wages. Defendant also asserts that she is not liable for liquidated damages because she had a good faith basis and reasonable grounds for not paying Plaintiff overtime wages. Though Defendant does not make a specific argument regarding her ability to assert a laches defense, she requests Plaintiff's motion for summary judgment be denied on the issue.

### A. Plaintiff is an employee under the FLSA.

Under the FLSA an employee "means any individual employed by an employer." 29 U.S.C. § 203(e)(1). To employ is to "suffer or permit to work." *Id.* at § 203(g). To distinguish employees from independent contractors for purposes of the FLSA, the Court applies the "economics realities test," which requires consideration of factors such as:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business.

*Real v. Driscoll Strawberry Ass., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). No single factor is dispositive. Rather, the determination depends "upon the circumstances of the whole activity." *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

As to the first factor, the record reflects that Defendant maintained the right to control Plaintiff's work. The "'right to control' does not require continuous monitoring of employees" and is "significant when it shows an individual exerts such control . . . that she stands as a separate economic entity." *Mathis v. Housing Authority of Umatilla Cnty.*, 242 F.Supp.2d 777, 783 (D. Or. 2002) (internal quotations and citations omitted). Although Plaintiff did not follow a specific Daily Activities sheet for his shifts, his general duties were determined by Defendant. (Doc. 52-2 at 8.) Defendant required Plaintiff to document his shifts in the Daily Log and to communicate with her via text message. (Doc. 54-2 at 91.) Any changes to the Sellmans' routine had to go through Defendant. (Doc. 52-2 at 16.) Defendant also controlled the days and durations of Plaintiff's shifts, minus any shifts Plaintiff picked up or switched with other caregivers. (Doc. 51-1 ¶¶ 26, 32; Doc. 52-2 at 6; Doc. 52-3 at 11.) Thus, the degree of control indicates an employee/employer relationship.

Because Plaintiff was paid at a fixed hourly rate of $20, he had no opportunity for profit or loss other than by charging Defendant for the number of hours he worked. Accordingly, the second factor weighs in favor of an employee/employer relationship.

Plaintiff made no investment in equipment or materials required for his work. All the equipment, such as that required to take the Sellmans' blood pressure and oxygen levels, was provided by Defendant. (Doc. 52-2 at 8.) Therefore, the third factor favors an employee/employer relationship.

Under the fourth factor, Plaintiff's work did not require special skill. Although Plaintiff was hired due to his previous experience in a caregiver role, his routine job functions were provided for and explained by Defendant. (*Id.* at 9-10.) Plaintiff was not required to have any special licenses or certifications for the job. (*Id.*) As Plaintiff did not use any special skills, this factor weighs towards finding an employee/employer relationship.

Plaintiff was hired for an indeterminate duration and either Plaintiff or Defendant could terminate the relationship at any time. (Doc. 52-3 at 25.) This is reflected by Plaintiff's termination of the relationship with Defendant via text on May 27, 2022. (Doc.

53-9 at 109.) These facts cause the degree of permanence factor to favor an employee/employer relationship.

In totality,[2] the economic realities reveal Plaintiff was an employee under the FLSA, not an independent contractor. Accordingly, Plaintiff is entitled to summary judgment on the issue of his status as an employee. Defendant's cross-motion on Plaintiff's status as an independent contractor is denied.

**B.  Triable issues of fact exist as to the Companionship Exemption.**

The FLSA requires employers ordinarily pay employees time and one-half their typical hourly wage for work exceeding 40 hours per week. 29 U.S.C. § 207(a)(1). Section 213 of the FLSA provides exemptions to this general rule, relieving employers of their duty to pay overtime wages. The "companionship exemption" exempts from overtime wages:

> any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves.

*Id.* at § 213(15).

"Companionship services" is defined as "the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself." 29 C.F.R. § 552.6(a). "Provision of fellowship" means "to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events." *Id.* "Provision of protection" means to "be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being." *Id.*

Companionship services may include the provision of care if the care is "provided attendant to and in conjunction with the provision of fellowship and protection and if it does not exceed 20 percent of the total hours worked per person per workweek." *Id.* at (b).

---

[2] The sixth factor is not relevant to the present facts because Defendant was not operating a business but merely hiring caregivers for her parents.

The "provision of care" means "to assist the person with activities of daily living (such as dressing, grooming, feeding, bathing, toileting, and transferring) and instrumental activities of daily living, which are tasks that enable a person to live independently at home (such as meal preparation, driving, light housework, managing finances, assistance with the physical taking of medications, and arranging medical care)." *Id.*

An "employer who claims an exception from the FLSA has the burden of showing that the exemption applies." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) (quoting *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983)). The employer must prove that the plaintiff fits plainly and unmistakably within the terms and spirit of the exemption. *Id.*

Defendant argues that Plaintiff falls within the companionship exemption because he was a domestic service employee that primarily provided fellowship/protection and spent less than 20% of his time on the provision of care. Any provision of care tasks was primarily completed by the day shift caregivers as they were a part of the Daily Routine sheets or because the Sellmans were awake. Plaintiff did not follow a Daily Routine sheet for any of his shifts and was therefore rarely required to do any tasks that would fall under the provision of care. Plaintiff's entries in the Daily Log were also sparse, which Defendant argues proves he did not, and could not have, provided care for 20% or more of the time.

Plaintiff argues that the lack of a Daily Routine sheet for his shifts and his sparse Daily Log entries are not dispositive of whether he spent 20% or more of his time on care. Despite mainly working night shifts, the Sellmans were constantly awake, requiring Plaintiff to provide further care than may seem typical for nighttime. (Doc. 52-2 at 17-18; Doc. 53-9 at 83.) Plaintiff routinely performed tasks that would constitute care, such as dressing, showering, and transferring the Sellmans. Plaintiff also administered the Sellmans' medications and took their blood pressure, heart rate, and oxygen twice a day. Neither Defendant nor the other caregivers witnessed first-hand any of Plaintiff's shifts or knew for sure what he did each shift. (Doc. 51-3 ¶¶ 16-17; Doc. 51-4 ¶¶ 16-17; Doc. 52-3 at 17, 25.)

Based on this competing evidence, the Court finds genuine issues of material fact preclude summary judgment for either party on the applicability of the companionship exemption. Both parties' motions therefore are denied as to this issue.

## C. Liquidated Damages

The FLSA states:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

An employer may be exempt from paying liquidated damages if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260.

Defendant argues she had a good faith basis and reasonable grounds for not paying Plaintiff overtime wages; Plaintiff argues the opposite. At this time, however, the Court declines to wade into damages because triable issues of fact preclude summary judgment on the predicate issue of liability. The parties' motions for a liquidated damages determination are denied.[3]

## D. Laches

Laches is an "equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (internal citations and quotations omitted). However, laches is "inapplicable where Congress has provided a statute of limitations to govern the action." *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 586 (9th Cir. 1993). The FLSA includes a statute of limitations governing "any cause of action for unpaid minimum

---

[3] Plaintiff's argument that Defendant cannot exclude Plaintiff's sleep hours from paid wages appears to be a non-issue, as Defendant concedes that Plaintiff's sleep hours had always been compensated.

wages, unpaid overtime compensation, or liquidated damages." 29 U.S.C. § 255. Accordingly, Defendant cannot assert a laches defense, s*ee Solis v. Washington*, No. 08-5362RJB, 2009 WL 2855441, at *7 (W.D. Wash. Aug. 31, 2009), and Plaintiff's motion for summary judgment on this issue is granted.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 51) is **DENIED**, and Plaintiff's motion for summary judgment (Doc. 52) is **GRANTED IN PART** and **DENIED IN PART** as explained herein.

**IT IS FURTHER ORDERED** that the parties shall participate in a telephonic trial scheduling conference on **December 21, 2023, at 10:00 a.m**. Call-in instructions will be provided via separate email.

Dated this 7th day of November, 2023.

Douglas L. Rayes
United States District Judge